STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                          FILED         SUPERIOR COURT DIVISION
MECKLENBURG COUNTY                         22 CVS 18708
                       2023 APR 20 P 2:49

                  MECKLENBURG CO., C.S.C.

| | |
|---|---|
| SENECA LOWERY,                              ) | |
|                  Plaintiff,                    ) | |
|      v.                                       ) | **AMENDED COMPLAINT** |
| HARDHAT WORKFORCE ) | **JURY TRIAL DEMANDED** |
| SOLUTIONS, LLC                        ) | |
|                 Defendant.                 ) | |

## I. INTRODUCTION

1. Mr. Seneca Lowery ("Plaintiff" or "Lowery") began working for HardHat Workforce Solutions, LLC ("Defendant" or the "Company") in or around 2019.

2. On March 1, 2022, Lowery rode as a passenger in a Company vehicle, when it was suddenly struck by another vehicle. Lowery suffered injuries to his neck and back in the crash, resulting in a stay in the emergency room for treatment. His doctors wrote him out of work until March 7, 2022, in order to recover from his injuries. His chiropractor then extended this time period to March 14, 2022. Lowery quickly informed the Company and had his requested time off approved.

3. Lowery required minimal additional time off from there to attend to ongoing medical appointments as part of his recovery. Any time that Lowery missed was approved by his supervisors. But then the Company suddenly fired him on March 25 for "missing all of those days."

1

4. Plaintiff now turns to this court to be made whole for his harms and losses. Plaintiff brings this action against Defendant for violations of the Retaliatory Employment Discrimination Act (Count I), Wrongful Discharge in violation of North Carolina Public Policy (Count II), and the Americans with Disabilities Act (Count III).

## II. PARTIES, JURISDICTION, AND VENUE

5. Plaintiff resides in North Carolina.

6. HardHat WorkForce Solutions, LLC is a North Carolina limited liability corporation that maintains an office at 4205 Stuart Andrew Blvd, Suite H, Charlotte, NC 28217.

7. Venue is proper in the Superior Court of Mecklenburg County because Defendant is a domestic limited liability corporation and maintains a place of business in Mecklenburg County. N.C. Gen. Stat. § 1-79(a)(2). The amount in controversy in this action exceeds twenty-five thousand dollars ($25,000).

## III. FACTUAL STATEMENT

8. Seneca Lowery began working for the Company in or around 2019 as a Laborer.

9. On March 1, 2022, Lowery rode in a Company vehicle as a passenger and was suddenly struck by another vehicle. Lowery required medical attention and went to the emergency room for his injures. As soon as he was able, Lowery informed his Supervisor, Greg, that he would be going to the emergency room the following morning. Greg approved this.

10. While at the emergency room, Lowery received treatment for injuries to his neck and back, which included injections and various exercises he would need to perform. Lowery's doctors ordered that he remain out of work until March 7, 2022. Lowery then sent pictures of

his doctor's notes to his supervisor, Adam. Adam later confirmed that this time off had been approved.

11. Since this injury happened at work, Lowery filed a workers' compensation claim.

12. Lowery visited a chiropractor for treatment on his back while on leave. His chiropractor wrote him out of work for an additional week, with a return date of March 14, 2022. Lowery forwarded this information to Adam via a text message, who again approved his absences.

13. On March 14, 2022, Lowery was set to return to work. He drove to his assigned worksite fully expecting to return to work. Lowery arrived to an empty job site. Confused, he texted Adam, who told him that the Department of Transportation had shut down the worksite, "for a week or two," due to dangerous conditions on the roadway. Lowery followed his instructions and returned home.

14. On March 15, 2022, Lowery returned to work, but the Company sent him and his coworkers home due to heavy rain. The following day, on March 16, Lowery texted Adam to see about returning to the worksite. Adam said that no work was scheduled.

15. On March 17, 2022, Lowery went to work. After approximately thirty minutes on the job site, Adam and Brandon pulled him off for an impromptu meeting. The pair told Lowery that they required a doctor's note stating that he could return to work without any restrictions. Lowery did as he was instructed and went straight to his chiropractor to retrieve a note allowing him to return to work without restrictions and sent it to Adam and Brandon.

16. Lowery went on to explain to Adam and Brandon that he was still undergoing treatment and would require ongoing doctor's appointments to treat his disabilities. Lowery

3

informed Adam he had a doctor's appointment the following day, and Adam approved the absence for March 18.

17. Lowery took his scheduled days off on March 19 and March 20. He worked normal shifts on March 21 and March 22, 2022. On March 23, Adam told Lowery that there was no work that day. On March 24, 2022, Lowery returned to work as normal and took a day off on March 25, 2022, for an approved doctor's appointment.

18. Following his doctor's appointment on March 25, Lowery received a phone call from Greg, who told him that the Company was terminating his employment due to him "missing all of those days." Lowery attempted to explain to Greg that he had numerous doctor's notices for his absences, and that he had sent them to both Adam and Greg himself, but he refused to listen.

19. Following his termination, several coworkers reached out to Lowery to tell him that management had openly referred to him as a "liability" because of his workplace injury.

20. Lowery timely filed a complaint with the North Carolina Department of Labor pursuant to the Retaliatory Employment Discrimination Act. On August 19, 2022, The Department of Labor issued Lowery a right to sue letter.

21. On September 16, 2022, Lowery filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on April 19, 2023.

## IV. LEGAL CLAIMS

### Count I
### *(North Carolina Retaliatory Employment Discrimination Act)*

22. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

23. Defendant qualified as an employer under North Carolina Retaliatory Employment Discrimination Act, N.C.G.S. § 95-241 ("REDA"), at all revanent times.

24. REDA prohibits employers from taking retaliatory action against an employee who initiates any inquiry, investigation, inspection, or other proceeding related to a workers compensation claim or threatens to do so. REDA also bars an employer from firing an employee who has recently experienced on a workplace injury if the injury motivated that decision.

25. Defendant violated REDA when it terminated and/or took other adverse employment action against Plaintiff in the terms, conditions, privileges, and benefits of his employment because of his workplace injury, worker's compensation filing, and/or initiating an inquiry, investigation, inspection, or other proceeding related to the North Carolina Workers Compensation Act.

26. As a proximate and foreseeable result of Defendant's wrongful conduct, Plaintiff has suffered lost back and future wages, benefits, severe emotional distress, anxiety, humiliation, medical expenses, and other compensatory damages.

27. Defendant's actions were done in bad faith and in a manner that demonstrates unreasonable and reckless disregard for Plaintiff's rights such that treble damages are

appropriate.

## Count II
### *(Wrongful Discharge in Violation of North Carolina Public Policy)*

28. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

29. The public policy of the State of North Carolina, codified in the North Carolina North Carolina Retaliatory Employment Discrimination Act, N.C.G.S. § 95-241 ("REDA"), seeks to protect and safeguard the opportunity and right of all individuals to pursue workers compensation claims. Defendant violated the public policy policy of North Carolina by violating REDA in the ways denoted above in Count I (which are hereby incorporated by reference as if fully restated herein).

30. Defendant violated North Carolina public policy by terminating Plaintiff because of his workplace injury, worker's compensation filing, and/or initiating an inquiry, investigation, inspection, or other proceeding related to the North Carolina Workers Compensation Act.

31. Defendant also violated North Carolina public policy as memorialized in the N.C. Equal Employment Practices Liability Act, N.C. Gen. Stat. 143-422.1 et seq. Under this law, it is against the public policy of North Carolina to discharge an employee because of their handicap. Defendant violated North Carolina public policy by terminating Plaintiff because of his handicap.

32. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in his earning capacity, severe

6

emotional distress, damage to his reputation, anxiety, depression, embarrassment, humiliation, and his peace of mind has been disturbed.

33. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

### Count III
### *(Violation of the Americans with Disability Act)*

34. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

35. Plaintiff was disabled in that he had impairments that substantially limited one or more major life activities and/or bodily functions, including but not limited to: injuries to his neck and back that limited the following major life activities and/or bodily functions: working, walking, standing, performing manual tasks, and caring for himself. These injuries also affected his skeletal and neurological systems.

36. Plaintiff suffered an adverse employment action when Defendant terminated his employment on the basis of his disabilities and/or in retaliation for receiving or requesting a reasonable accommodation (medical leave).

37. The Company failed to engage in the interactive process required by the Americans with Disabilities Act. Plaintiff did what he was required to do by alerting the Company to his disabilities and to his need for accommodation. The Company appeared to approve his

7

required absences in response, but then fired him for missing these days. The Company then invented additional absences in order to cover up its discrimination and retaliation.

38. Had the Company engaged in the required interactive process, Plaintiff and the Company would have arrived at a reasonable accommodation that would have allowed Plaintiff to treat his disabilities and then return to performing the essential functions of his job.

39. The Company is also violating the Americans with Disabilities Act by apparently maintaining a maximum leave policy under the Americans with Disabilities Act. Employers are required to evaluate employees' disability needs on an individual basis. Placing a cap on the amount of time they are willing to provide is unlawful. The law instead requires employers to participate in the interactive process to evaluate what an individual employee needs to accommodate their disability and what can be accomplished without imposing undue burdens on the business.

40. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, emotional distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

41. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

8
Case 3:23-cv-00315-FDW-DCK   Document 1-3   Filed 05/24/23   Page 8 of 10

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff damages for all harms and losses;

2. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.*;

3. Award Plaintiff treble damages pursuant to N.C. GEN. STAT. § 95-243;

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action.

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 20th day of April, 2023.

/s/ Sean F. Herrmann
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
1712 Euclid Avenue
Charlotte, North Carolina 28203
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on Defendant by including it with the initial service packet served upon Defendant's registered agent as follows:

> HardHat Workforce Solutions, LLC
> C/o Robert E. Hartman
> 1302 Jefferson Road
> Greensboro, NC 27410-3529
>
> *Registered Agent for Defendant*

This the 20th day of April, 2023.

Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue, Suite 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiff*